# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITRIN DIRECT INSURANCE COMPANY | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| MICHAEL ESPOSITO | : | NO. 16-5239 |

## MEMORANDUM OPINION

**Savage, J.**                                                                   **November 29, 2017**

Unitrin Direct Insurance Company moves for reconsideration of the order declaring it has a duty to defend its insured in a state court personal injury action. Unitrin challenges the finding that although the injury-producing conduct alleged in the underlying action does not fall within the policy definition of an occurrence, the exception to the policy exclusion for intentional conduct expressly provides coverage for an insured who acted in self-defense or defense of another. In essence, Unitrin contends that we did not properly apply Pennsylvania's four corners rule in determining whether the policy covered the claims made in the underlying action. It argues that we should not have considered the insured's answer in the underlying action and in the declaratory judgment action to determine whether the exception to the exclusion in the policy may apply, triggering a duty to defend.

Because Unitrin has not demonstrated an error of law, we shall deny its motion for reconsideration.

### Standard of Review

A party may move to alter or amend a judgment under Rule 59(e) only where: (1) there has been an intervening change in controlling law; (2) new evidence has become available; or (3) there is a need to correct a clear error of law or fact, or to prevent

manifest injustice. *Schumann v. Astrazeneca Pharm., L.P.*, 769 F.3d 837, 848 (3d Cir. 2014) (citation omitted); *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citation omitted); *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). A Rule 59(e) motion may not be used to relitigate issues or present arguments that could have been raised, but were not. *Blystone*, 664 F.3d at 416 (citing *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)).

## Analysis

Unitrin argues that we misapplied Pennsylvania law in relying on facts outside the complaint in the underlying action when we determined that it had a duty to defend Esposito in that action. Unitrin maintains that once we determined there was no occurrence, defined in the policy as an accident, that was the end of the coverage inquiry. It urges us to ignore a provision which it had raised, that provides coverage for an insured who causes bodily injury when acting in self-defense or defense of another.

Alternatively, it argues that it was error to consider one exclusion and not another. Because the exception to the expected or intended injury exclusion potentially provided coverage, we did not consider the policy exclusion barring coverage for injury arising out of "physical abuse."

These are not new arguments. We already considered and rejected them. Because Unitrin's motion is a reiteration of the arguments it made in its motion for judgment on the pleadings, it does not merit reconsideration. Nevertheless, we shall explain why there was no clear error.

In analyzing whether Unitrin has a duty to defend, we must read the policy in its entirety. *Pa. Nat'l Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014) (citing

*Riccio v. Am. Republic Ins. Co.*, 705 A.2d 422, 246 (Pa. 1997)). We do not look at one provision standing alone. Instead, we examine it "in the context of the entire policy." *Med. Protective Co. v. Watkins*, 198 F.3d 100, 105 (3d Cir. 1999) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)); *see also Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 321 (3d Cir. 2011).

A court must give effect to the plain language of the insurance contract. *Murray*, 658 F.3d at 320. When the language is plain and unambiguous, the court is bound by that language. *St. John*, 106 A.3d at 14. When it is ambiguous, the provision is construed in favor of the insured. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673–74 (3d Cir. 2016); *St. John*, 106 A.3d at 14. Contract language is ambiguous if it is reasonably capable of more than one meaning. *St. John*, 106 A.3d at 14. However, policy language may not be stretched beyond its plain meaning to create an ambiguity. *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011); *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009).

An ambiguity may be created by conflicting provisions. *Adamitis v. Erie Ins. Exch.*, 54 A.3d 371, 379–80 (Pa. Super. 2012) (analyzing whether an exclusion is ambiguous when read against another provision within the insurance policy); *see also Sch. Dist. of City of Monessen v. Farnham & Pfile Co.*, 878 A.2d 142, 149 (Pa. Commw. Ct. 2005) (concluding that ambiguity is created by two conflicting contract provisions). In determining whether a term is ambiguous, not only must it be considered in the context of the entire policy language, but also from the surrounding circumstances. *United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982, 986 (Pa. Super. 1986) (quoting *Erie Ins. Exch. v. Transamerica Ins. Co.*, 507 A.2d 389, 392 (Pa. Super. 1986)).

In interpreting the homeowner's policy issued by Unitrin, we concluded that the policy provisions defining occurrence and the exception to the expected or intended injury exclusion created an ambiguity. The policy provides coverage for bodily injury caused by an occurrence, defined as an accident. It excludes coverage for bodily injury that is expected or intended by the insured. But, it provides coverage for an insured who causes bodily injury while using reasonable force to protect himself or others.[1]

These provisions are inherently incompatible, creating a conflict. On one hand, the definition of an occurrence as an accident necessarily excludes intentional conduct from coverage. On the other hand, intentional conduct carried out in self-defense or defense of another is not excluded. If conduct is not excluded, it is included. Stated differently, if Unitrin had intended to exclude all intentional conduct, why would it have included the exception for self-defense? The exception to the exclusion together with the definition of an occurrence creates an ambiguity. Thus, given that the policy

---

[1] The policy excludes coverage for bodily injury that is expected or intended by the insured in Exclusion E.1, which reads:

Coverages E and F do not apply to the following:

1. Expected Or Intended Injury

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion E.1 does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property.

Compl. Ex. A, Section II – Exclusions, Coverage E – Personal Liability (Doc. No. 1-2) ¶¶ E.1–E.1.b, at ECF 7.

contains two conflicting provisions, it is construed in favor of the insured. *Ramara,* 814 F.3d at 673–74; *St. John*, 106 A.3d at 14.

In his answer in this action, Esposito claimed he acted in defense of himself and his wife. We recognize that whether Esposito acted in defense of himself and his wife is not undisputed. If Esposito proves in the underlying action that he used reasonable force to protect himself and his wife, his conduct is covered. On the other hand, if he fails to prove that the force was reasonable or was in self-defense, his conduct is not covered. Until it is determined whether Esposito acted with reasonable force in self-defense or in defense of his wife, Unitrin has a duty to defend him even though it will not have a duty to indemnify him under either circumstance.

### *The Four Corners Rule*

Unitrin correctly points out that "[t]he question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010) (citation omitted). The "four corners rule" generally prevents a court from considering extrinsic factual evidence, such as affidavits, deposition testimony, or facts developed through discovery in determining an insurer's duty to defend. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Comm. Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006).[2]

---

[2] In support of its argument, Unitrin cites to *Germantown Ins. Co. v. Martin*, 595 A.2d 1172 (Pa. Super. 1991), which held that extrinsic evidence to show self-defense was not admissible because the allegations of intentional gunshots clearly fell within the policy's exclusion of "expected or intended" damage. *Id. Martin* is distinguishable. The "expected or intended" clause did not include any exception to the exclusion for self-defense or defense of another, as does the policy here.

The rule is not without exception. There are circumstances where evidence beyond the four corners of the underlying complaint may be considered. Extrinsic evidence may be used to rebut the insurer's contention that a policy exclusion bars coverage. In that case, the burden is on the insured "to show that the exclusion which appears to be triggered does not apply after all." *Air Prods. & Chems., Inc. v. Hartford Acc. & Indem. Co.*, 25 F.3d 177, 180 (3d Cir. 1994) (citations omitted). If the insured is successful in demonstrating that coverage is not necessarily excluded by the facts averred in the underlying complaint, the insurer is required to defend. *Id.*

Extrinsic evidence may also be introduced to show that an exception to an exclusion does not apply. *Haines v. State Auto Prop. & Cas. Ins. Co.*, 417 F. App'x 151, 153 (3d Cir. 2011) (quoting *Air Prods.*, 25 F.3d at 180; and *N. Ins. Co. of N.Y. v. Aardvark Assocs., Inc.*, 942 F.2d 189, 196 (3d Cir. 1991)). The insurer may rely on extrinsic evidence only if it is "used to show that no exception to the exclusion applied, and not to support the application of the exclusion" itself. *Id.*; *see also Aardvark Assocs.*, 942 F.2d at 196 (analyzing extrinsic evidence to determine scope of pollution exclusion clause exception for discharges that are "sudden and accidental" under Pennsylvania law). Thus, although extrinsic evidence is barred to show the claim falls outside coverage pursuant to an exclusion, it is allowed to demonstrate that the claim is covered by an exception to the exclusion.

In resolving the question whether the insurer has a duty to defend, extrinsic evidence may be used to demonstrate the possibility of coverage, but not to exclude it.[3]

---

[3] *See, e.g.*, *Heffernan & Co. v. Hartford Ins. Co. of Am.*, 614 A.2d 295, 298 (Pa. 1992) (holding that answers to interrogatories filed in the underlying action, which put the insurer on notice that a complaint would probably be amended to state a covered claim, triggered a duty to defend); *see also, e.g.*, *Meridian Mut. Ins. Co. v. Cont'l Bus. Ctr.*, No. Civ. A. 04-1639, 2005 WL 856935, at *5 (E.D. Pa. Apr.

6

Of course, further discovery in the underlying case may reveal facts that plainly take the case outside policy coverage, relieving the insurer of the duty to defend.

In determining the scope of Unitrin's duty to defend, we found that this case fell within what the Third Circuit has described as "the subset of exclusion cases that concerns exceptions to exclusions," inviting us to look beyond the complaint in the underlying action. *Air Prods.*, 25 F.3d at 180. We then concluded that the definition of an "occurrence" conflicts with the exception to the exclusion which covers intentional conduct carried out with reasonable force in self-defense or defense of another.[4]

To rigidly apply the four corners rule here would render the exception to the exclusion providing coverage superfluous and illusory. *USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 200 (3d Cir. 2006) (quoting *Girard Trust Bank v. Life Ins. Co. of N. Am.*, 364 A.2d 495, 498 (Pa. Super. 1976)). If a court could not look beyond the complaint in the underlying action alleging that the insured assaulted the plaintiff, an insured claiming self-defense could not invoke a duty to defend. How else could a court determine that an insured was claiming self-defense if it could not consider what his defense was in the underlying action? It could do so only by considering his answer in the underlying case or his answer in the declaratory judgment action. Otherwise, the insurer could avoid its duty to defend under the exception to the exclusion.

---

14, 2005), *aff'd*, 174 F. App'x 104 (3d Cir. 2006) (to determine whether there is a duty to defend under Pennsylvania law, the court determined a person's status as an "insured" before applying the four corners rule); *Penn Nat'l Ins. v. HNI Corp.*, 482 F. Supp. 2d 568, 607–11 (M.D. Pa. 2007) (analyzing deposition transcripts, certificate of insurance and an independent contractor agreement to determine whether a party is an additional insured under Pennsylvania law).

[4] Indeed, at oral argument on the motion for reconsideration, Unitrin's counsel agreed that there is a conflict between these two provisions. Oral Arg. Tr. at 6:22–7:9. But, limiting his focus to the complaint, he argued that the conflict is not supported by the allegations. *Id.* at 10:3-6.

In other four corners jurisdictions, courts have looked beyond the complaint in the underlying action to determine whether the self-defense exception to an intentional acts exclusion provided coverage. For example, the Illinois Supreme Court held that potential coverage existed under a policy, which contained both an exclusion for intentional acts and a self-defense exception to that exclusion, where the insured relied on self-defense in his counterclaim. *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1022–23 (Ill. 2010). The court held that where coverage depends on whether an insured acted in self-defense, the court must consider all the evidence presented before deciding the insured has no duty to defend. *Id.* Consequently, in determining the scope of the insurer's duty to defend in such a case, the court may consider pleadings beyond the underlying complaint. *See id.*

Similarly, where an insured had been sued for personal injury resulting from an assault, the Virginia Supreme Court looked beyond the allegations in the underlying complaint to conclude the insurer had a duty to defend its insured who claimed he had acted in self-defense. *Copp v. Nationwide Mut. Ins. Co.*, 692 S.E.2d 220, 224–25 (Va. 2010). It then held that the insurer had a duty to defend its insured under the self-defense exception to the expected or intended injury exclusion in the policy. *Id.*

The *Copp* court found that the insured's conduct in a fist fight was not excluded as an intentional act because the jury could find he acted in self-defense, an exception to the exclusion for intentional acts causing bodily injury. *Id.* Explaining why it was not applying the four corners rule, the Virginia Supreme Court acknowledged:

> In several prior decisions in this type of case, we have applied the rule that only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured. None of our prior

8

decisions, however, has involved the type of situation we have here, where in one of the four corners of an insurance policy there is a provision specifically stating that an exclusion "does not apply to bodily injury or property damage caused by an insured trying to protect person or property." This provision must be considered and construed together with each phrase of the umbrella policy.

*Id.* at 225 (internal citations and footnotes omitted).

The *Copp* court further explained that the self-defense exception to the exclusion "requires consideration of an insured's claim that he or she caused bodily injury or property damage trying to protect person or property in evaluating whether there is a duty to defend in a given case." *Id.* This evaluation necessitates looking beyond the underlying complaint.

If the four corners rule were rigidly applied, the insured who acts in self-defense or to protect someone else would never be afforded a defense, even though the policy covers such acts. Certainly, a plaintiff in the underlying complaint would not allege that he was injured when the defendant, the insured, acted in self-defense. *See Pekin*, 930 N.E.2d at 1022–23.

Unitrin contends that because there was no occurrence, the exclusions are irrelevant. However, it is not the expected or intended injury exclusion that triggers the duty to defend. It is the exception to the exclusion that does. The exception provides coverage for conduct that does not fall within the definition of an occurrence or accident and would otherwise be excluded from coverage.

Again, we emphasize that the exception does not create a duty to indemnify, only a duty to defend. An insurer's duty to defend continues unless and "until the claim is narrowed to one patently outside the policy coverage." *Stidham v. Millvale Sportsmen's Club*, 618 A.2d 945, 954 (Pa. Super. 1992), *appeal denied*, 637 A.2d 290 (Pa. 1993);

*Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987). Thus, Unitrin must defend Esposito in the underlying suit until a jury finds that he did not act in self-defense or in defense of his wife.

### *Public Policy*

Unitrin complains that we did not address its argument that requiring an insurer to defend and indemnify an insured in connection with "willfully injurious" acts would contravene public policy. Just as it is against public policy for an insurer to defend an insured for bodily injury caused by intentional conduct, it is against public policy for an insurer to refuse to defend an insured who caused injury while defending himself or another. It would contravene public policy to absolve an insurer of its duty to defend an insured against a claim for bodily injury caused by conduct carried out with reasonable force in self-defense or defense of another in light of the language of the exception to the expected or intended injury exclusion.

Although "the law presumes [an insured acting in self-defense] intended the result which was the natural consequence of his intentional act, one acting in self-defense is confronted with a risk over which he has little control." *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 406 n.23 (3d Cir. 2016) (internal quotation marks and brackets omitted) (quoting *Transamerica Ins. Grp. v. Meere*, 694 P.2d 181, 188–89 (Ariz. 1984)). Resulting injury will be covered because of "the underlying purpose of insurance: protecting against risks that are outside [the insured's] control. It would be inconsistent with that purpose to exclude coverage for an insured who is simply attempting to avoid a calamity which has befallen him." *Id.* (internal citations and quotation marks omitted) (quoting *Meere*, 694 P.2d at 185–86).

On one hand, it is against public policy to insure against claims for intentional torts or criminal acts. *See, e.g.*, *Gene's Restaurant,* 548 A.2d at 247 (no duty owed where underlying complaint alleged assault and battery and occurrence defined in policy as "an accident, . . . which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured"); *Martin*, 595 A.2d at 1175 (citing *Wilson v. Maryland Cas. Co.*, 105 A.2d 304 (Pa. 1954); and *Esmond v. Liscio*, 224 A.2d 793 (Pa. Super. 1966) (no duty based on language of the insurance contract and public policy)); *see also, e.g.*, *Travelers Prop. Cas. Co. of Am. v. Mericle*, 486 F. App'x 233, 238 (3d Cir. 2012) (no duty based on policy's occurrence language and various exclusions, including for knowing violations of rights and violations of penal statutes, and noting Pennsylvania's public policy against shifting responsibility to insurers for one's intentional acts).

On the other hand, Pennsylvania public policy encourages rescue and rendering aid at the scene of an emergency. *See Kmart Corp. v. W.C.A.B. (Fitzsimmons)*, 748 A.2d 660, 666 & n.3 (Pa. 2000) (citing 42 Pa. Cons. Stat. § 8332(a)). The Pennsylvania Good Samaritan statute provides immunity from civil liability for rendering aid at the scene of an emergency event or a crime. 42 Pa. Cons. Stat. § 8332(a). It provides: "Any person . . . who in good faith renders emergency care, treatment, first aid or rescue at the scene of an emergency event or crime . . . shall not be liable for any civil damages" except for acts or omissions that were grossly negligent or carried out with an intent to harm. *Id.*

The public policy rationale for the Good Samaritan rescue doctrine applies equally to a rule encouraging persons to defend another. Thus, it would contravene

public policy to absolve an insurer of its duty to defend its insured against civil suits arising from conduct undertaken with reasonable force to defend himself or another where the policy contains a self-defense exception, as it does here.

At this stage, there is a dispute whether Esposito intentionally assaulted the plaintiff in the underlying action or was acting in defense of himself and his wife. Until the factfinder in the underlying action determines how and why Esposito acted, we do not know which public policy applies. In the meantime, Unitrin must defend Esposito.